

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Governor O'Daniel:

Opinion No. O-2768
Re: Authority of the Governor
to execute a lease to the
Federal Government, covering
land owned by the State of
Texas for the use and benefit
of the 36th Division, Texas
National Guard, and its
successors.

We have your letter of September 20, 1940, and the file enclosed therewith.

These papers indicate that legal title to the land comprising Camp Hulen, National Guard Camp, situated in Matagorda County, Texas, is held by the State of Texas for the use and benefit of the 36th Division of the Texas National Guard, and its successors. The file, above referred to, contains a form of lease, dated September 9, 1940, which proposes that the State of Texas acting through you shall lease the above mentioned property to the Federal Government for a rental of One ($1.00) Dollar per annum. With reference to this lease, your letter reads as follows:

"I would appreciate an opinion from you as to whether or not I have the legal right to execute the deed that is now presented to me for execution in behalf of the State of Texas. . . ."

Before an officer of the State can legally execute a lease on land owned by the State, he must be so authorized by law. Caples v. Cole, (Supreme Court of Texas, 1937), 102 S. W. (2d) 173, 129 Tex. 370; rehearing denied, 104 S. W. (2d) 3, 129 Tex. 370.

As was stated in the case of St. Louis Land & Building Ass'n. v. Fueller, et al (Supreme Court of Missouri, 1904), 81 S. W. 414, "the terms 'sell and convey', when applied to real estate, mean, in the absence of appropriate expressions in the instrument itself limiting and restricting such general acceptance of the meaning of such terms, a conveyance in fee"; and ordinarily, the power to sell does not imply a power to lease, James v. Anderson (Supreme Court of New Mexico, 1935) 51 P. (2d) 601; 2 C. J. 646.

In the case of Fort Worth Cavalry Club, Inc., v. Sheppard, Comptroller, (Supreme Court of Texas, 1935), 83 S. W. (2d) 660, 125 Tex. 339, wherein there was involved the authority of the Adjutant General to lease property, on behalf of the State, to be used as an armory for the National Guard, the Court, in part, said:

". . . The powers and duties of public officers are defined and limited by law. By being defined and limited by law, we mean the act of a public officer must be expressly authorized by law, or implied therefrom. 22 R. C. L. p. 555, [ 114. . . ."

Therefore, before the Governor would be authorized to lease the land in question, which is owned by the State for its military forces, he must be so authorized by law.

Article 16, Section 34, Constitution of Texas provides:

"The legislature shall pass laws authorizing the Governor to lease, or sell to the Government of the United States, a sufficient quantity of the public domain of the State necessary for the erection of forts, barracks, arsenals, and military stations, or camps, and for other needful military purposes; and the action of the Governor therein shall be subject to the approval of the Legislature."

This constitutional provision is not self executing, but, as shown on its face, simply authorizes the Legislature to enact laws.

Articles 5242 and 5245, Vernon's Revised Civil Statutes, 1925, provide, in substance, that when this State may be the owner of any land desired by the United States, for, among other things, forts, military stations, magazines, and arsenals, the Governor may sell such land to the United States and upon payment of the purchase money therefor into the treasury, the Land Commissioner, upon the order of the Governor, shall issue a patent to the United States for such land in like manner as other patents are issued. Article 5761, Vernon's Revised Civil

Honorable W. Lee O'Daniel, page 3


Statutes, 1925, grants the Governor full control and authority over all matters touching the military forces of this State. By the terms of this statute, such power extends to its organization, equipment and discipline. We have considered each of the above statutes, but are unable to read into their provisions the power of the Governor to lease the land in question, which is owned by the State for the use of its military forces.

Evidencing the fact that the power to lease or sell the land in question must be expressly conferred by law before it may be exercised is Senate Bill No. 504, 45th Legislature, 1937; Article 5382a, Vernon's Revised Civil Statutes. This Act creates a board of six (6) men, composed of the Governor, Adjutant General, and the four senior active general officers of the 36th Division, Texas National Guard, and authorizes said "Board" to lease, for mineral purposes, the very land we have in question. By referring to this Act, we do not intend to infer that the Camp Hulen Lease Board may lease this land to the Federal Government for military purposes, but the reference is made simply to evidence the legislative construction as to the necessity for specific authority before the land in question may be disposed of.

As we have been unable to find any law which expressly or impliedly authorizes the Governor to lease the surface of the land in question, in accordance with the rule announced by the Supreme Court in Fort Worth Cavalry Club, Inc., v. Sheppard, Comptroller, supra, you are respectfully advised that you are not authorized to execute the lease in question. This opinion passes only upon the power of the Governor to execute the lease submitted to us and is not to be understood as holding that the Governor is authorized to sell the land in question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Robert E. Kepke
Assistant

By

Harry A. Shuford

HAS:AMM

APPROVED OCT 10, 1940

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS